UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

_____
STEPHEN MANKUS                     :
                                   :
                                   :
         v.                        :      No. 02-3425
                                   :
                                   :
SWAN REEFER I, A.S.                :
_____

ORDER

**AND NOW**, this          day of                        , 2003, upon consideration of Plaintiff's Motion In Limine and any response thereto and this Court having noted that defendant has failed to comply with its Scheduling Order in several respects and that Plaintiff's case will be severely prejudiced if this evidence is introduced since Plaintiff has had no opportunity for proper discovery, it is hereby **ORDERED:**

1.  Defendant is precluded from offering into evidence all facts pertaining to the recent the surveillance, including the videotapes taken in March and April, 2003, and defendant is further precluded from cross-examining Plaintiff on any matters developed by defendant's surveillance activities in March and April 2003 since it cannot prove these activities by independent evidence; and

      2.    Defendant is precluded from calling Dr. Jerome D. Staller as a witness or offering his report; and

      3.    Defendant is precluded from offering the videotape of the activities on the TUNDRA PRINCESS on April 24, 2003.

```
                              _____
                                              Yohn, J.
```

```
                  UNITED STATES DISTRICT COURT FOR THE
                    EASTERN DISTRICT OF PENNSYLVANIA
```

```
_____
STEPHEN MANKUS                          :
                                        :
                                        :
         v.                             :   No. 02-3425
                                        :
                                        :
SWAN REEFER I, A.S.                     :
_____
```

**NOTICE OF MOTION**

To: A. Robert Degen, Esquire
    Fox, Rothschild, O'Brien and Frankel
    2000 Market Street, 10th Floor
    Philadelphia, PA 19103

   Carl D. Buchholz, III, Esquire
   Rawle & Henderson LLP
   The Widener Building
   One South Penn Square
   Philadelphia, PA 19107

   If you wish to oppose this Motion, you should file a

response as soon as possible since trial is scheduled to begin on

May 19, 2003.


                                        E. ALFRED SMITH & ASSOCIATES



                                        _____
                                        E. Alfred Smith
                                        Attorney for Plaintiff

UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

```
_____
STEPHEN MANKUS                         :
                                       :
                                       :
           v.                          :    No. 02-3425
                                       :
                                       :
SWAN REEFER I, A.S.                    :
_____
```

**MOTION IN LIMINE**

    Plaintiff, Stephen Mankus, respectfully moves this Court for an Order precluding defendant from introducing certain evidence at trial and in support thereof avers as follows:

    1.   As ordered by this Court in its Scheduling Order of July 18, 2002, plaintiff notified Magistrate Smith at the close of discovery on December 24, 2002 that the matter had not settled.

    2.   Magistrate Smith duly scheduled a Settlement Conference for January 13, 2003 and directed counsel to file memoranda with him prior thereto.

    3.   Plaintiff timely filed his Memorandums and defendant never filed any.

4.  Shortly before January 13, 2003 defendant notified Magistrate Smith that it was not prepared to discuss settlement and the conference was summarily cancelled.

5.  This is not unusual in longshoremen personal injury cases.  In every case the vessel owner files a Motion for Summary Judgment, irrespective of whether the Motion lacks merit, and thereafter it refuses to discuss settlement until the Motion has been decided.

6.  Defendant duly filed its Motion for Summary Judgment on January 17, 2003, and plaintiff filed his Opposition with Appendix on February 6, 2003.  Although defendant's reply was due by February 16, 2003, it was not filed until February 24, 2003.

7.  Plaintiff thereafter began preparing for the trial, which was scheduled to begin on March 24, 2003.

8.  In early March, 2003 defense counsel called and asked plaintiff's counsel for a "demand" figure because he said his client wanted one.

9.  Plaintiff's counsel agreed to examine the matter since he had not considered a settlement a likely possibility in light of defendant's attitude.

10.  Plaintiff's counsel consulted other maritime claims persons he knew from his defense days and obtained what was suggested to him as a fair "demand" figure and a fair settlement figure.  The demand figure was $4.5 million, which was the amount of a verdict in a case tried in Philadelphia 6-7 months ago which

involved similar injuries, and the settlement figure was $3 million, which is roughly three times plaintiff's special damages.  These figures were recommended by a maritime personal injury claims adjuster with 25 years' experience handling these claims.

    11.  Plaintiff's counsel called defense counsel and gave him the figures and returned to preparing for trial.

    12.  A few days thereafter defense counsel called and asked for plaintiff's greement to a 45-day continuance, which was denied.  He then asked for a 30-day continuance, which was denied.  He then said that his client wanted a mediation and suggested three names, the first of which was a lawyer from Savannah, Georgia who was represented as having mediated many cases for defense counsel's client for several years.  Plaintiff's counsel observed that a mediation would probably not be fruitful because defendant had cancelled the settlement conference a few months earlier and the Summary Judgment Motion was still unresolved so nothing had changed.  Defense counsel persisted and kept insisting that the mediation could produce a settlement and begged for plaintiff's agreement.

13. Plaintiff's counsel thereupon discussed the matter with his client and others and when defense counsel called back plaintiff's counsel said he would agree to the mediation on one condition: the parameters for the mediation would be from $1.5 million to $4.5 million and that the mediator be so instructed.

14. Defense counsel agreed to this condition and said he would call the mediator.

15. When defense counsel called plaintiff's counsel, he said the mediator was available and that he had told him of the parameters for the mediation. Plaintiff's counsel then agreed to a 30-day continuance for the mediation.

16. This was confirmed in writing by plaintiff's counsel by letter dated March 6, and defense counsel was asked to confirm it also in writing. This and a few follow up letters were ignored and utimately defense counsel responded in writing and was very evasive.

17. When the mediator called plaintiff's counsel, he said he had never been told of the parameters but would keep the parameters in mind when conducting the mediation.

18. At the mediation, there was no mention of the parameters, and the opening offer by the defendant was $500,000 because the Motion for Summary Judgment had not yet been decided. Plaintiff's counsel thereupon terminated the mediation because it was clear that it was not being conducted in good faith in accordance with the one condition on which plaintiff's agreement

had been obtained.  That condition was meant to be a sign of good faith on the part of the defendant that it was looking past the Summary Judgment Motion and genuinely wanted to settle the case.

19.   After the continuance was granted by the Court defendant promptly undertook surveillance activities.

20.   In Supplemental Answers to Interrogatories (Exhibit 1) served by letter dated April 28, 2003, defendant says that surveillance videotapes were obtained on March 19, 2003 and April 2, 2003.

21.   There is not enough time remaining before trial for plaintiff's counsel to obtain discovery to determine how often surveillance was conducted; why videotapes were not obtained on days other than those indicated; what activities of plaintiff were not videotaped; whether the videotapes have been spliced or altered and all other facts going to the legitimacy of the tapes.

22.   On March 29, 2003 defendant obtained a report from Economist Dr. Jerome D. Staller.  This was served on plaintiff's counsel a month later, by letter dated April 30, 2003, along with a purported amendment to Defendant's Rule 26a(3)(A)(C) Statement,

which named Dr. Staller as a witness.  A copy of Dr. Staller's report is attached as Exhibit 2, and counsel's letter is Exhibit 3.

23.  There is not enough time remaining before trial for plaintiff's counsel to depose Dr. Staller and do other research necessary to test the legitimacy of his conclusions.

24.  On April 24, 2003 defendant videotaped a discharging operation on a different ship.  This was made known to plaintiff's counsel by a Second Set of Supplemental Answers to Plaintiff's Interrogatories dated April 30, 2003 and served by letter of the same date.  The Second Amended Answers are attached are Exhibit 4.

25.  Not enough time remains for plaintiff's counsel to depose the person who took the videotape to determine the circumstances under which it was taken and whether it was altered or spliced or otherwise tampered with.  Furthermore, the tape depicts an operation which is not at all similar to the operation involved in this case and cannot be understood without an explanation by the person involved in producing the videotape.

26.  This Court's Scheduling Order of July 18, 2002 establishes the following deadlines:

Discovery to be completed by December 24, 2002.

Defendant's expert reports to be produced 20 days before the expiration of the discovery period.  (December 4, 2003).

27.  The Rule 26a(3)(A)(C) Statement of witnesses and exhibits was to be filed and served before the end of discovery. Defendant has never filed such a Statement but he did serve a copy on plaintiff's counsel by letter dated February 27, 2003, and copies this letter (Exhibit 5) and his Statement (Exhibit 6) are attached.

28.  Plaintiff's case will be severely prejudiced if this evidence is introduced during the trial because he has had no opportunity for proper discovery since it was all developed months after discovery ended and made available to plaintiff's counsel for the first time just a few weeks before the trial is scheduled to start.

WHEREFORE, plaintiff requests that the Court grant the relief being requested.

                              Respectfully,

                              E. ALFRED SMITH & ASSOCIATES


                              _____
                              E. Alfred Smith
                              1333 Race Street, 2nd Floor
                              Philadelphia, PA 19107
                              (215) 569-8422
                              Attorney for Plaintiff

```
              UNITED STATES DISTRICT COURT FOR THE
                 EASTERN DISTRICT OF PENNSYLVANIA
```

```
_____
STEPHEN MANKUS                       :
                                     :
                                     :
            v.                       :    No. 02-3425
                                     :
                                     :
SWAN REEFER I, A.S.                  :
_____
```

**MEMORANDUM OF LAW**

**FACTS**

On the eve of trial, 4 months after discovery was closed by Court Order, defendant:

    1.   Discloses surveillance films which it recently obtained and which it apparently intends to use at trial; and

    2.   Produces a recently obtained report from an economics expert and apparently intends to offer the expert as a witness at trial; and

    3.   Produces a recently obtained videotape of simulated stevedoring operation aboard a different vessel.

Plaintiff has been denied discovery on all of these recently developed items of evidence, and his case will be severely prejudiced by the introduction of this evidence.

**DISCUSSION**

    1.    **Surveillance videotapes**.

Plaintiff filed interrogatories asking whether defendant had surveillance videotapes of plaintiff, and he also filed a Request for Production which sought any such videotapes to be produced by defendant. Defendant denied the existence of any such videotapes and produced nothing.

In its Supplemental Answer dated April 30, 2003, defendant identified videotapes taken on March 19 and April 2, 2003 but it did not produce these videotapes in response to Plaintiff's Request to Produce.

Surveillance videotapes taken by a defendant must be produced by a defendant after the defendant has a deposition to enable it to cover the materials on the videotapes. See _Snead v. American Export-Isbrandtsen Lines, Inc._ 59 F.R.D. 148 (E.D.Pa. 1973); _Blyther v. Northern Lines, Inc._, 61 F.R.D. 610 (E.D.Pa. 1973); _Corrigan v. Methodist Hospital_, 158 F.R.D. 54 (E.D.Pa. 1994); _Williams v. Picker International, Inc._, 1999 U.S. Dist. Lexis 19107 (E.D.Pa. 19107). In _Williams_ the Court expressly noted that if the defendant decides that it wants to use surveillance videotapes at trial it must disclose their existence

at least six weeks before the due date for the submission of a pre-trial memorandum.

The whole purpose of the foregoing is to give plaintiff time to obtain discovery into the <u>bona</u> <u>fides</u> of the films because plaintiff is as much entitled to cross-examine their credibility as defendant is to cross-examine the credibility of plaintiff.

Here defendant waited almost one month before disclosing the existence of the videotapes.  Discovery closed on December 24, 2002 and defendant has not sought an extension.  Plaintiff has not agreed to any extension, and this Court's Scheduling and Discovery Policy states:

> "7.  The discovery deadline means that all reasonably foreseeable discovery must be served, noticed and completed by that date.  Discovery may take place thereafter by agreement of the parties without court approval, so long as the trial will not be delayed and trial preparation will not unreasonably be disrupted."

Plaintiff has been denied all opportunity of obtaining discovery concerning the surveillance videotapes.  Their existence was not disclosed for one month after they were made, and they have appeared on the eve of trial.

Plaintiff submits that the tapes should be excluded from evidence and that defendant should also be precluded from cross-examining plaintiff on the basis of whatever is disclosed in

those videotapes because defendant cannot support its cross-examination by independent admissible evidence.

**<u>Defendant's Recently Obtained Expert Opinion - Dr. Staller</u>**

On April 30 2003 defendant served plaintiff with a copy of a report from The Center for Forsensic Economic Studies signed by four people and purported to amend its Rule 26a(3)(A)(C) statement by adding Dr. Jerome Staller as a witness.

Plaintiff has not enough time remaining to depose Dr. Staller and do the necessary research to enable him to cross-examine Dr. Staller at trial.  Ineffective cross-examination is no cross-examination at all.

This Court's Scheduling Order, dated July 18, 2002, required defendant's expert reports to be produced to plaintiff by December 4, 2002.

Defendant never sought plaintiff's agreement to extend the discovery deadline and arbitrarily obtained the expert report in defiance of this Court's order.

This Court's Scheduling Policy, sent to counsel in July 2002, states as follows:

> "12. Unexcused violations of scheduling orders are subject to sanctions under Fed.R.Civ.P 16(f), upon motion or the initiative of the court.

In a somewhat similar case, Judge Reed denied a defendant the opportunity to use an expert witness where the witness' identity and report were not made known to plaintiff until the eve of trial.  See <u>Mullen v. Kobe Shipping Co., Ltd.</u> C.A. No. 93-6396 (copy of Order attached).

Plaintiff submits that defendant should be precluded from calling Dr. Staller as a witness and from offering his report as evidence.

**<u>Defendant's Recently Prepared Videotape</u>**

Defendant took videotape aboard a different vessel on April 24, 2003 and supplied plaintiff with a copy of the tape on May 1, 2003.

Plaintiff has had no opportunity to depose the person or persons responsible for the videotaping, so plaintiff cannot inquire into the bona fides of the taping procedure nor can he determine whether the tape has been spliced or altered in any way.  The time display on the video skips quite a bit, so plaintiff would like to determine why.

Defendant had months before the discovery deadline of December 24, 2002 to obtain a videotape and it could have done so aboard the vessel involved in this lawsuit since that ship came

into this Port almost twice a month during 2002.  For whatever reasons it chose not to do so.

The videotape is of a different vessel, and it purports to show the sight line from a crane operator's cabin.  The sight line is distorted, however, because the videotape was taken aboard a vessel with only a single height of containers whereas this lawsuit involves a discharge operation where the containers were three high.  The discharge of a container is very slowly done, so it appears the whole thing was staged.  The videotape was taken before longshoring operations began at 0700 hours, so it does not depict a scene substantially the same as plaintiff's accident scene.  Finally, the tape shows someone doing something with an unlocking pole.  The person is talking, but there is no audio.  The person is using the pole on a single height of containers, which is not the situation in this lawsuit.  The pole is clearly shorter than the one used by plaintiff at the time of the accident.  The pole is also a different configuration than that used by plaintiff.

Only with a deposition can plaintiff get an understanding of the relevance of this videotape and what it is intended to demonstrate, and there is no time remaining to do that.  On its face the videotape is inadmissible.

There are other problems with the video which plaintiff could explore by discovery, but plaintiff has been denied that opportunity.

**CONCLUSION**

For the foregoing reasons plaintiff submits that his Motion should be granted.

Respectfully,

E. ALFRED SMITH & ASSOCIATES

_____
E. Alfred Smith
Attorney for Plaintiff

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that he has, on this date, caused a true and correct copy of Plaintiff's Motion In Limine to be served by hand delivery, on the date listed below upon the following parties or counsel of record:

> A. Robert Degen, Esquire
> Fox, Rothschild, O'Brien and Frankel
> 2000 Market Street, 10th Floor
> Philadelphia, PA 19103
>
> Carl D. Buchholz, III, Esquire
> Rawle & Henderson LLP
> The Widener Building
> One South Penn Square
> Philadelphia, PA 19107

 

        _____
        E. Alfred Smith
        Attorney for Plaintiff
        Stephen Mankus

Date: