UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

---
STEPHEN MANKUS                    :
                                  :
         v.                       :    No. 02-3425
                                  :
SWAN REEFER I, A.S.               :
---

**ORDER**

    **AND NOW THIS**  day of                                  , 2003, upon consideration of Defendant's Motion and Plaintiff's Response, it is hereby **ORDERED** that Defendant's Motion for Reconsideration is **DENIED.**

                                                 _____
                                                                     J.

UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STEPHEN MANKUS : | |
| : | |
| v. : | No. 02-3425 |
| : | |
| SWAN REEFER I, A.S. : | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION
FOR RECONSIDERATION**

Plaintiff objects to Defendant's Motion for Reconsideration and in opposition thereto answers as follows:

1. Admitted.

2. Denied. Plaintiff denies that the Court misinterpreted the evidence and that the Court made an "unprecedented and unwarranted extension of the 'turnover duty.'"

3. Denied. Plaintiff is entitled to have all reasonable inferences drawn in his favor because he is the nonmoving party. The Court carefully explained its reasoning, which is valid and logical, and pointed out that defendant did not dispute plaintiff's assertions. The Captain's testimony pertains to an e-mail which dealt with cords that had not been properly bundled and stowed and described this as a dangerous condition, an opinion shared by the Captain as he testified. The e-mail nowhere talks about a cord hanging down 50', so the Captain's testimony was correctly interpreted by the Court. The Court was perfectly correct in considering the combination of the failure to bundle and stow and the failure to secure properly as creating

the hazardous condition.  Although the Court did not cite it, plaintiff also offered the sworn opinion of its maritime expert, who unequivocally said that the stow was dangerous to longshoremen when the vessel was turned over because the cords had not been bundled and stowed as it was the vessel owner's obligation to do.

    4.    Denied as stated.  Defendant's repeated assertion that there is "no evidence" is disingenuous.  Ship Boss Collins (Ex. 7, pp. 36,37, 68) testified that the bundles were usually tied with pieces of rope or string, but the one involved in the accident just came unbundled.  "It just dropped."  Hatch Boss Lamb (Ex. 8, pp. 88-89) said that if the cords had stayed tied, the accident would not have happened.  He said that they were not able to foresee the fact that one cord would let go.

    5.    Denied.  Here defendant is drawing inferences, and the rule is clear that all inferences are to be drawn in favor of plaintiff.  The inferences which defendant attempts to draw deal with explanations for why the rope became untied, so defendant acknowledges that the rope did, in fact, become untied.  No one saw the cord become snagged or caught; the testimony was that it just came unbundled.  The suggestion that the rope had a "latent, unknown defect or deficiency" belies the testimony.  Ship Boss Collins said that the rope used to tie the cords was "like old rope.  That's all they put on it.  It's nothing like brand new, high tech stuff that we have."  (Ex. 7, p. 68).

6. Denied. It is clear that the cord should not have become unbundled but it did. The inferences available are to be drawn in favor of the plaintiff. It is equally clear that if the ship had properly bundled and stowed the cord, as the owner was paid to have done, no accident would have happened.

7. Denied. The Captain testified about an e-mail which said nothing about cords hanging 50'. The e-mail talked only about cords that had not been bundled and stowed properly and said this was a dangerous condition, with which the Captain agreed.

8. Denied as stated. The Captain's testimony is consistent with that of the supervisory longshoremen. If the cords had remained properly tied, they would have been discharged without incident.

9-10. Denied. The e-mail speaks for itself and the Captain agreed that the failure to roll up and stow the electrical cords created a situation dangerous to the longshoremen. Plaintiff believes the record is clear, especially

since Albano authorized an extraordinary monthly bonus to be paid to the crew for rolling up and stowing the cords properly.

11.   Denied.  The Captain's testimony speaks for itself. The Court should also note that defense counsel did not say that the cord was hanging down 50'.  He simply referred to the "cords hanging down."  Had counsel meant 50', he would have said so.

12.   Denied.  Defendant is adding its words which are not in the e-mail, counsel's questions or the Captain's testimony. Defendant's argument about the testimony is fallacious and certainly does not warrant a re-examination of the Court's Memorandum.

13.   Denied.  The Court correctly concluded that the stow was hazardous because it contained a hidden condition created by defendant about which the stevedore was not warned and which came into play and caused the emergency situation which plaintiff tried to correct.

14.   Denied.  This is repetitious of the previous paragraph, so the same answer applies.

15.   Denied.  This is also repetitious, so the same answer applies.

16.   Denied.  As the Court's Memorandum pointed out, plaintiff conceded that the duty to intervene was not in issue. Plaintiff has not changed his position.

17.   Denied.  This is also repetitious, but the only duty plaintiff seeks to impose on defendant is the contractual

obligation for which it was paid $5000 per month to perform, yet it did not fulfill its obligation and an unreliable Chief Mate lied to the Captain and said that it had been done and the vessel was ready for discharge, even though it clearly was not. Instead, the vessel contained a hidden hazard which came into play and caused the accident to plaintiff.

    18.   Denied. This is also repetitious. The duty imposed on the vessel owner is to do things properly and in accordance with what it was paid to do. This it failed to do, and it failed to warn the stevedore of the hidden danger which the stevedore could not see. The stevedore, as the testimony clearly indicates, could not foresee that one of the cords would become unbundled.

    19.   Denied. This is a new assertion by defendant. In its Memorandum the Court considered the alternatives available to the stevedore. Furthermore, there can be more than one proximate cause for an accident, so the jury need only decide whether the vessel's negligence was a proximate cause in order to find liability.

20. Denied. The Court's Memorandum is not premised on several unsupported assumptions, and there is no valid reason why the Court should reconsider its Order.

21. Denied. This court explained its reasoning, and plaintiff submits it is correct. Defendant fails to mention that *Howlett* specifically said that:

> "Because the vessel does not exercise the same degree of operational control over, and does not have the same access to, the cargo stow, its duties with respect to the stow are limited by comparision." (citation omitted)
>
> 512 U.S. at 104

22. Denied. Defendant omitted the preceding sentence which was part of the same paragraph as that containing the portion cited by defendant. The whole paragraph makes clear that the court considered cargo to be separate because the crew does not have access to or control over the cargo. In this case, however, the crew had access to and control over the cords, and it failed in its duties. The *Howlett* distinction, therefore, does not apply, and this Court correctly applied the *Kirsch* rule accordingly.

23. Denied. Defendant has not cited the "controlling" caselaw properly, so there is no basis for the Court to rescind its Order. Furthermore, there is no basis for certifying this question pursuant to 28 U.S.C. §1292(b). That would only delay the litigation unnecessarily, and it is extremely unlikely that defendant would be granted permission to appeal because the

Court's reasoning is correct and defendant repeatedly misstates the law and the testimony.

24. Denied. Defendant's threat to appeal is baseless. On this point the Court's analysis is correct, and the hysteria about an "unprecedented and unwarranted" extension of the law is foolish.

WHEREFORE, plaintiff requests that the Court deny defendant's Motion.

                                      E. ALFRED SMITH & ASSOCIATES


                                      _____
                                      E. Alfred Smith
                                      1333 Race Street, 2nd Floor
                                      Philadelphia, PA 19107
                                      (215) 569-8422
                                      Attorney for Plaintiff

UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

```
_____
STEPHEN MANKUS                          :
                                        :
           v.                           :    No. 02-3425
                                        :
SWAN REEFER I, A.S.                     :
_____
```

**Memorandum of Law in Opposition to
Motion for Reconsideration**

I. **Facts**

    The Court's Memorandum and Order permits plaintiff to proceed to the jury only on the"turnover duty."  Defendant repeatedly suggests that the Court made unwarranted factual assumptions. Mere repetition, however, does not give defendant's argument any validity.

    Plaintiff's Response sets forth his answers to defendant's many allegations, and plaintiff regrets that he must repeat many of these things once again.

    First, the testimony is clear that the cord became unbundled, and fell, and defendant does not challenge that. Defendant also agrees that the cord became untied before it became unbundled.  It simply says that there may have been other reasons why the cord became untied.  Defendant is therefore drawing inferences, and all such inferences, including that the tying was "defective", are to be drawn in plaintiff's favor because he was the non-moving party.

    Defendant's duty was to bundle and stow the cords in the

recesses in the containers.  This it failed to do.  Instead, the crew merely bundled the cords and tied them with "old rope" and left them hanging outside the containers.

The Captain's testimony is clear.  At first he was consistent with the testimony of the longshoremen, but then he did admit that having hanging cords was dangerous to longshoremen.  He was not asked if that applied to cords hanging 50' and his answer did not so specify.  The e-mail with which he agreed did not refer to cords hanging 50' down; it referred to cords not properly bundled and stowed.  The interpretation stressed by defendant does not fit and also flies in the face of the rule that inferences are to be drawn in favor of the plaintiff.

It is quite correct that the dangerous condition was the unstowed cords with a cord tied in such a way that it permitted the bundle to become unbundled during discharge.  This was a hidden condition created by the crew and which was not brought to the attention of the stevedore.  Indeed, it was not brought to the attention of the Captain, who was told by an unreliable Chief

Mate that the ship was "ready for discharge." The ship was so tendered, even though the Captain admitted that it was not ready for discharge.

Whether this hidden condition of an improperly tied cord was "open and obvious" is clearly a jury question. Obviously, plaintiff believes the hidden condition was not "open and obvious" and since the condition was created by the crew when it had complete control of the containers and the cords, the *Howlett* separation of the cargo from the vessel and its equipment does not apply. This Court amply explained this in its Memorandum, and on this it will undoubtedly be affirmed if an appeal is taken.

To suggest that the vessel did not become "hazardous" until the unbundling occurred is disingenuous and fallacious.

II. **Legal Argument**

Defendant continues to obfuscate by trying to say that there was no danger until the cord became unbundled.

This stow was a ticking time bomb waiting to explode. It was dangerous while it was ticking, and it became manifest when it exploded. The cargo presented a dangerous condition because of the poorly or defectively tied rope, and this was not open or obvious, but the danger became manifest when the cargo unbundled.

The stevedore dealt with the situation as best it could, and defendant now offers argument, but no evidence, suggesting that the stevedore's handling of this admittedly unforeseen and

emergency condition was improper.  Hatch Boss Lamb said that the unbundling was completely unforeseen, and Ship Boss Collins said they could have discharged the containers without incident if the unbundling had not occurred.

It is axiomatic, as pointed out by Judge Becker in *Serbin* 96 F.3d at 75 that there can be more than one proximate cause for an accident.  Accordingly, the jury need only find that the vessel's fault was a proximate cause in order to find the shipowner liable.

A.  **The Evidence is Sufficient to Establish a Breach of the Turnover Duty**

Defendant continues its repetition, but the argument is the same.

The hazard was created because the crew did not properly bundle and put away the cords.  The longshoremen tried to get the crew to do its job, but the crew refused to do so.  The longshoremen therefore had no alternative but to discharge the cargo, as the Court pointed out.

The longshoremen acknowledged that had the bundles remained tied, they could have discharged the containers without incident although it would have made the discharge more dangerous and time-consuming.  However, the unbundling was unforeseen, and so testified by Hatch Boss Lamb, and the longshoremen had to deal with this unforeseen situation, about which they had not been warned, and they did so as best they could.  They reacted exactly as they had reacted on the very few occasions they had encountered this in the past.

The condition which caused the unbundling was the fact that the rope - an "old rope" - became untied, and defendant admits this.  Defendant argues other inferences as accounting for the untying, but all inferences are to be drawn in plaintiff's favor.

Plaintiff also points out that he submitted a sworn report from an expert which clearly said that the stow, with this hidden defect, was dangerous.  The longshoremen so testified when they described the unbundling as being unforeseen and unexpected; the Master also testified that the stow was dangerous and the Time Charterer's employee, Albano, also said it was dangerous because the cords had not been bundled and stowed properly.

There is ample evidence of the dangerous nature of the cargo to justify having this case go to a jury.

B.   **The Duty to Warn About Open and Obvious Dangers**

First of all, plaintiff disagrees with defendant's characterization of *Howlett*.  *Howlett* said that the shipowner was

under a duty to warn of hidden dangers in the stow which it knew about or should have known about. Since the crew bundled and tied the cords it should have known that one was a potential problem. Thus even under _Howlett_ the vessel owner should have warned the stevedore of this condition but it failed to do so.

Plaintiff has already pointed out, and defendant keeps ignoring, that _Howlett_ created an exception for the cargo because the shipowner lacks access to and control of the cargo. That was not true in this case because the crew had access to and complete control over the containers before they were turned over to the stevedore for discharge.

## CONCLUSION

Defendant has set forth no basis which would justify a reconsideration of this Court's Memorandum and Order of May 20, 2003. It has not discussed any reason for asking for an immediate appeal, probably because there is no basis for doing so.

Plaintiff submits that defendant's Motion should be denied.

Respectfully,

E. ALFRED SMITH & ASSOCIATES

_____
E. Alfred Smith
1333 Race Street, 2nd Floor
Philadelphia, PA 19107

```
(215) 569-8422
Attorney for Plaintiff
Stephen Mankus
```

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that he has, on this date, caused a true and correct copy of Plaintiff's Response to Defendant's Motion for Reconsideration to be served by hand delivery, on the date listed below upon the following parties or counsel of record:

>A. Robert Degen, Esquire
>Fox, Rothschild, O'Brien and Frankel
>2000 Market Street, 10th Floor
>Philadelphia, PA 19103
>
>Carl D. Buchholz, III, Esquire
>Rawle & Henderson LLP
>The Widener Building
>One South Penn Square
>Philadelphia, PA 19107

>_____
>E. Alfred Smith
>Attorney for Plaintiff
>Stephen Mankus

Date: